UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

ANN MARIE MADISON,

          Plaintiff,

   v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

          Defendant.

CIVIL ACTION NO. 3:CV-07-364

(Judge Kosik)

**MEMORANDUM**

    Presently before us is a dispute concerning a decision by the Commissioner of Social Security in which the Commissioner denied Plaintiff, Ann Marie Madison's ("Madison" or "Plaintiff") claim for disability insurance benefits ("DIB"), pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401–434. We review the record pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to determine whether there is substantial evidence to support the Commissioner's decision. The matter was assigned to Magistrate Judge Malachy E. Mannion. In his Report and Recommendation filed on April 1, 2008, the Magistrate Judge found that substantial evidence supported the Commissioner's decision and recommended that Madison's appeal be denied. Plaintiff filed objections to the Report and Recommendation. For the reasons that follow, we agree with the Magistrate Judge and find that the Commissioner's decision is supported by substantial evidence. Accordingly, Plaintiff's appeal will be denied.

**I. PROCEDURAL BACKGROUND**

    On November 18, 2004, Plaintiff applied for disability insurance benefits, alleging disability beginning December 28, 2000. (R. 16.) The Social Security Administration initially denied the claim on March 9, 2005. Plaintiff timely filed a request for a hearing, and on October 16, 2006, an Administrative Law Judge ("ALJ"), denied Plaintiff's claim for DIB. (R. 16-25.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision[1] (R. 5-7, 11-12), thereby making the ALJ's decision the final decision of the Commissioner. *See* 42 U.S.C. § 405(g). Plaintiff appealed the ALJ's decision, and the matter was assigned to Magistrate Judge Mannion who issued a Report and Recommendation. Plaintiff objects to the Report and Recommendation, claiming that the Magistrate Judge erred when he upheld the ALJ's finding that Plaintiff retained the residual functional capacity ("RFC") to perform light work, and that the Magistrate Judge improperly upheld the ALJ's finding that Plaintiff is capable of performing work as a data entry clerk and typist. We will review and consider Plaintiff's objections.

## II. FACTUAL BACKGROUND

After thirty years of work as a research assistant, Plaintiff has not worked since December 28, 2000. (R. 269-70.) As a result of lower back and leg pain, Plaintiff saw Brian A. Powers, M.D., who diagnosed her with acute low back pain with probable exacerbation of an old disc disease. (R. 120.) After approximately one month of physical therapy, Dr. Powers noted that Plaintiff had excellent range of motion of her spine, she did not suffer from any spasms, and she had no point tenderness and no neurologic deficit. (R. 115.)

On November 16, 2004, Plaintiff underwent left shoulder athroscopy and athroscopic acromioplasty surgery. (R. 146.) David J. Caucci, M.D., the performing surgeon, estimated that Plaintiff would be disabled for six months after the surgery. (R. 207.) On December 7, 2004, William S. Maigur, M.D., completed a Multiple Impairment Questionnaire in which he stated that Plaintiff could sit for one hour or less, stand for one hour, but that she could never lift or carry with her left arm, and had marked limitations in her left upper extremity with grasping, turning and twisting objects, performing fine manipulations, and engaging in reaching, including overhead reaching. (R. 196-200.) After examining Plaintiff on February 21, 2005, Gregory Salko,

---

[1]"The Appeals Council will review a case if: (1) there appears to be an abuse of discretion by the administrative law judge; (2) there is an error of law; (3) the action, findings or conclusions of the administrative law judge are not supported by substantial evidence; or (4) there is a broad policy or procedural issue which may affect the general public interest." 20 C.F.R. § 404.970(a).

M.D., stated that she could occasionally lift and carry two to three pounds with her right arm, stand and walk one hour or less, sit for eight hours, and could push and pull unlimitedly. (R. 221.) On March 4, 2005, Gerald Gryczko, M.D., completed a Residual Functional Capacity Assessment Form and found that although Plaintiff had osteoarthritis and left shoulder rotator cuff syndrome, she could perform light work, but was limited in pushing and pulling with the left upper extremity. (R. 231-32.) Dr. Gryczko, a state agency medical expert, stated that Plaintiff could never climb a ladder, rope, or scaffold, could never crawl, but could occasionally climb a ramp or stairs, and occasionally balance, stoop, kneel, and crouch. (R. 231-32.) On January 4, 2006, Plaintiff returned to Dr. Caucci, and stated that her back pain was "tolerable" and that for the most part she was better. (R. 246.) He noted that she suffered from a small midline posterior bulging annulus, a possible mild herniation, a bulging disc, and mild degenerative disc disease. (R. 246.)

Plaintiff has a high school education, and has previously worked as a research assistant and an administrative officer. (R. 263, 273-78.) Plaintiff testified that she drives short distances, cooks, does laundry, and grocery shops with the help of her husband. (R. 288.) She further testified that she can sit for approximately twenty minutes, stand for twenty to twenty-five minutes, and can walk around the block. (R. 285-86, 292.)

### III. STANDARD OF REVIEW

When objections are filed to a Report and Recommendation of a Magistrate Judge, we review *de novo* those portions of the report to which objections are made. 28 U.S.C. § 636(b)(1)(C) (2000). In our review, we may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1)(C). Although our review is *de novo*, we may, in the exercise of sound judicial discretion, rely upon the Magistrate Judge's proposed recommendations if appropriate. *United States v. Raddatz*, 447 U.S. 667, 676 (1980).

When a claimant appeals from a final decision by the Commissioner of the Social Security Administration, we will uphold the Commissioner's decision if it is supported by substantial evidence. *See* 42 U.S.C. § 405(g) (2000); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "It consists of more than a mere scintilla of evidence but less than a preponderance." *Stunkard v. Sec'y of Health and Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). If the conclusion of the ALJ is supported by substantial evidence, we may not set aside the Commissioner's decision even if we would have decided the factual inquiry differently. *Hartranft*, 181 F.3d at 360.

## IV. DISCUSSION

To receive disability benefits under the Social Security Act, an individual must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The individual must show that there is a medically determinable basis for impairment. *See Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). Physical impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Moreover,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists n the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work

> which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Social Security Administration uses a sequential five-step evaluation process to determine whether an individual qualifies for disability benefits. *See* 20 C.F.R. § 404.1520. If the ALJ finds that an individual is disabled or is not disabled at any step in the sequence, review ceases. *Id.* The ALJ must sequentially determine:

> (1) whether the claimant is engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment;
> (3) whether the claimant's impairment meets or equals one of the impairments listed in the Social Security Administration's Listing of Impairments, *see* 20 C.F.R. § 404.1520, Subpart P, Appendix 1;
> (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and
> (5) whether the claimant's impairments prevents the claimant from performing work in the national economy.

*Id.*

In his review of Plaintiff's claim, the ALJ proceeded through each step of the sequential evaluation process and concluded that Plaintiff was not disabled according to the Social Security Act. (R. 16-25.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful work activity since her alleged disability onset date, December 28, 2000. (R. 18.) At step two, the ALJ found that Plaintiff's impairments of left rotator cuff tear with surgery, degenerative disc disease of the lumbar spine, degenerative joint disease/osteoarthritis, and a history of vertigo were "severe" within the meaning of the regulations. (R. 18-19.) At step three, the ALJ reviewed and analyzed Plaintiff's health problems and concluded that she does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments set forth in Subpart P, Appendix 1. (R. 19-21.) The ALJ noted that although Plaintiff has numerous health issues, her impairments were not severe enough to establish disability. (R. 19-21.) The ALJ further found that Plaintiff has the RFC to perform a limited range of light work. (R. 22.) He based this conclusion on objective medical records, progress notes from physicians, Plaintiff's daily living activities, and the medical opinion of a state agency medical expert. (R. 22-23.) At

step four, the ALJ took note of the vocational expert's opinion that Plaintiff could perform past relevant work, but he decided to explore alternative occupations at step five.[2] (R. 23.) At the fifth and final step of the disability evaluation, the ALJ found Plaintiff can work in the national economy because she has readily transferable skills and the RFC to perform light work. (R. 24.) The vocational expert testified that an individual similarly situated (age, education, past work experience, and RFC) to Plaintiff could work as a data entry clerk or a typist. (R. 24.) Consequently, the ALJ found that Plaintiff is not disabled as defined in the Social Security Act. *See* 20 C.F.R. 404.1520(g).

The Magistrate Judge issued a Report and Recommendation affirming the ALJ's decision, finding that it was supported by substantial evidence. Plaintiff filed two objections to the Magistrate Judge's Report and Recommendation.

### A. First Objection: The Magistrate Judge improperly upholds the ALJ's finding that Plaintiff retained the RFC to perform light work.

Plaintiff argues that the ALJ's determination that she retained the RFC to perform light work is inconsistent with the opinions of her treating physicians. Plaintiff further claims that the ALJ erred in relying on the opinion of a state agency medical expert, while rejecting the opinions of her treating physicians. We disagree.

Treating physicians' reports should be accorded great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer*, 186 F.3d at 429 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d. Cir. 1987)). "Greater weight should be given to the findings of a treating physician than to a physician who has examined the claimant as a consultant, but a statement by a Plaintiff's treating physician that she is 'disabled' or 'unable to work' is not dispositive." *Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994); *see* 20 C.F.R. § 404.1527(e)(1). Nonetheless, when

---

[2]Despite this finding, the heading of this section in the ALJ's opinion reads: "The claimant is unable to perform any past relevant work." (R. 23.) The defendant argues that the inconsistency between the finding and the heading is the result of a computer error.  We discuss this *infra*.

the opinion of a treating physician conflicts with that of a non-treating, non-examining physician (as is the case here), the ALJ may choose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (citing *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d. Cir. 1993)). Furthermore, the ALJ may not make "speculative inferences from medical reports" or "employ his own expertise against that of a physician who presents competent medical evidence." *Plummer*, 186 F.3d at 429. The ALJ must consider all evidence, including an opinion from a state agency medical consultant, and give some reason for discounting the evidence he rejects. *Id*. State agency medical consultants are highly qualified physicians who are also experts in Social Security disability evaluation. 20 C.F.R. § 404.1527(f)(2)(i). The ALJ applies the same rules and regulations used to weigh the onions of treating physicians when he weighs the opinions of state agency medical consultants. *Id*.

In his decision, the ALJ gave great weight to the opinion of the state agency medical expert, Dr. Gryczko, to find that his conclusions about Plaintiff's health were most consistent with the objective evidence and the progress notes of treating physicians. (R. 22.) Dr. Gryczko found that Plaintiff can lift or carry ten pounds frequently and twenty pounds occasionally. (R. 22.) She can sit, stand, or walk for six hours in an eight-hour day, with no limits on pushing or pulling with lower extremities. (R. 22.) Furthermore, he found that Plaintiff is able to occasionally crouch, kneel, stoop, balance, and climb a ramp or stairs. (R. 22.) Dr. Grycko concluded that Plaintiff can never climb ladders, ropes, or scaffolds, never crawl, and can never perform overhead reaching with the left upper extremity. (R. 22.) The ALJ gave little weight to the opinions of Plaintiff's three treating physicians. The ALJ concluded that their opinions were not supported by objective medical evidence, the progress notes, or Plaintiff's daily living activities. (R. 21-23.) We agree. The objective medical evidence coupled with the progress notes from her physicians and her daily living activities show that Plaintiff is not disabled under the meaning of the Act.

After performing surgery, Dr. Caucci issued a "conservative estimate" that Plaintiff would be disabled for six months. Dr. Caucci's opinion shows that he believed Plaintiff to be *temporarily* disabled.(R. 207.) Permanent disability within the meaning of the Act must last for a continuous period of twelve months. Plaintiff concedes this point, but argues that the Magistrate Judge failed to acknowledge Dr. Caucci's six follow-up examinations. The progress notes from these examinations, however, showed that Plaintiff's impairments (including osteoarthritis, joint, back, leg, elbow, and hip pain) fall below the level of severity needed to qualify for DIB. (R. 20-1, 246-51.) On May 20, 2005, Dr. Caucci noted that Plaintiff's shoulder appeared to be doing well after surgery. (R. 250.) Dr. Salko, who stated that Plaintiff can stand or walk about one hour in an eight hour day, based this finding on his diagnosis that Plaintiff suffered from chronic, intractable lumbosacral disc disease with herniations. (R. 221-28.) Nevertheless, Plaintiff's subsequent MRI failed to show intractable lumbosacral disc disease with herniations. (R. 246.) The MRI revealed that Plaintiff suffered from mild degenerative disc disease, which is not considered a "severe" impairment under the listing. (R. 246.) Therefore, Dr. Salko's opinion cannot be given great weight, because the objective medical findings contradict it.

In his latest examination on January 4, 2006, Dr. Caucci stated that Plaintiff's back pain was tolerable and for the most part, she was better. (R. 246.) Moreover, bilateral straight leg raises that were performed on Plaintiff proved to be negative. (R. 246.) Aside from the surgery, which was a success, Plaintiff has had only conservative treatment on her back, knee, foot, and leg, even though she claims that those are the areas that bother her the most. Treatment notes reveal that Plaintiff has periodically complained of pain (approximately once every three months), and she does not take any prescription pain medicine. (R. 246-51.)

Furthermore, Plaintiff's testimony regarding her daily living activities is inconsistent with Dr. Maigur's opinion that she can sit one hour or less in an eight hour day, can stand or walk one hour total in an eight hour day, and would miss more than three work days per month. In addition, Dr. Salko's opinion that Plaintiff can stand or walk about one hour in an eight hour day

cannot be reconciled with Plaintiff's daily living activities. Plaintiff testified that she drives (albeit shorter distances than she used to), prepares and cooks meals, uses the computer, sits and reads (generally outside), performs activities of self-care (dressing, bathing, etc.), and does laundry and grocery shopping with the help of her husband. (R. 279-97.) She does not use a cane, crutch, walker, or any other aid. Plaintiff's daily living activities contradict Dr. Maigur's and Dr. Salko's respective opinions.

Plaintiff cites *Rider v. Apfel* to argue that the Magistrate Judge improperly upheld the ALJ's decision to give little weight to the opinions of Plaintiff's treating physicians. *Rider* is inapposite to this case. In *Rider*, the court reversed the ALJ's decision to discredit the opinions of certain treating physicians because it was not based on objective medical evidence. *See Rider v. Apfel*, 115 F. Supp. 2d 496, 501-02 (M.D. Pa 2000). In this case, the ALJ analyzed all the evidence and properly determined that Plaintiff is not disabled within the meaning of the Act.(R. 25.)

The ALJ correctly afforded great weight to Dr. Gryczko's opinion. Dr. Gryczko diagnosed Plaintiff with osteoarthritis and left shoulder rotator cuff syndrome, which is consistent with objective medical evidence. (R. 230-37.) According to Dr. Gryczko, although Plaintiff had musculoskeletal limitations, she could still perform light work. This finding is supported by progress notes from physicians as well as Plaintiff's daily living activities. Accordingly, the ALJ's decision that Plaintiff retains the RFC to perform light work is supported by substantial evidence. We dismiss Plaintiff's first objection.

### B.  Second Objection: The Magistrate improperly upholds the ALJ's finding that Plaintiff is capable of performing work as a data entry clerk and typist.

Plaintiff argues that at step four of the evaluation process, the ALJ intended to find that Plaintiff could not perform past relevant work. Plaintiff further claims that the ALJ misconstrued the vocational expert's findings, and that she is incapable of performing work as a data entry clerk and typist. We disagree.

If a typographical error is immaterial to the case, it should be discarded. *Hudson v. Commissioner of SSA*, 93 Fed. App'x 428, 430 (3d Cir. 2004) (not precedential). In the ALJ's decision, the heading to address step four of the evaluation reads: "The claimant in unable to perform any past relevant work." It is clear to us that "unable" is a typographical error. This error is harmless, immaterial, and irrelevant because the ALJ moved on to step five and found that Plaintiff could perform other work in the national economy.

Under this heading, the ALJ wrote:

> The claimant has past relevant work as a research assistant and as an administrative officer. The vocational expert testified that the clamant's past work was sedentary and skilled. The vocational expert determined that the claimant had readily transferable clerical skills. Although the vocational expert opined that the claimant was able to perform past relevant work, the undersigned will explore alternative occupations at the fifth step. The State agency also determined at the fourth step in the evaluation process that the claimant could perform her past relevant work

(R. 23.) The passage makes clear that the ALJ decided, based on testimony from the vocational expert and the state agency medical expert, that Plaintiff was capable of performing her past relevant work as a research assistant and administrative officer. Even if it were the intent of the ALJ to find that Plaintiff was unable to perform past relevant work, it would be irrelevant because he continued to step five and found that Plaintiff was able to perform other work in the national economy.

At step five, the ALJ heard testimony from a vocational expert who concluded that given Plaintiff's age, education, past relevant work experience, and RFC, she could perform work as a data entry clerk and typist. These two jobs exist in the national economy (as defined in 42 U.S.C. § 423(d)(2)(A)); there are 16,000 data entry clerk positions in Pennsylvania and 339,000 nationally, and there are 14,500 typist jobs in Pennsylvania and 404,000 nationally. (R. 303-04.) The vocational expert found that Plaintiff acquired clerical skills from her past relevant work that readily transfer to these two jobs.

Plaintiff argues that when asked whether restrictions on overhead reaching would have an impact on Plaintiff's ability to perform these two jobs, the vocational expert answered in the affirmative. The vocational expert testified:

> It's kind of here. In the real world in terms of how the work is required to be performed, I think a person for the skilled work as a research assistant, administrative officer would be able to perform the work without problem due to overhead reading. And for the data entry clerk and typist, I would say yes...

(R. 304-05.) The vocational expert's response to this specific question is ambiguous at best. Given the vocational expert's full testimony, it is not necessary to interpret his answer. In response to the following, more restrictive hypothetical, the vocational expert testified that an individual like the one described could in fact work as a data entry clerk and typist. Counsel questioned the vocational expert using a new hypothetical:

> [A]ssume a hypothetical individual the same age, education, and past work experience as the Claimant who can occasionally lift only with the right arm two to three pound. That's lifting occasionally, carrying occasionally, only with the right arm, two to three pounds. This individual can stand and/or walk for one hour or less cumulatively in an eight-hour day. . . . This individual should never bend, kneel, stoop, crouch. Could occasionally balance and climb. This individual has no limitation on handling, fingering, feeling, seeing, hearing, speaking, tasting, smelling. . . . Again, I'll make that limitation no overhead reaching. This individual has limitation where she should avoid poor ventilation, heights, moving machinery, vibration, temperature extremes, wetness, dust, fumes, odors, gasses, and humidity. Could my hypothetical individual perform the . . . data entry clerk job, the typist job, or any sedentary job?

(R. 305-07.) He responded to the question regarding the data entry job and the typist job: "My thinking is, if I understand the gist of your hypothetical and I think I do, I do believe the person could do some sedentary, semi-skilled positions as a data entry clerk and typist. No overhead reaching." (R. 307.) Therefore, Plaintiff's argument that the vocational expert testified that an individual with restrictions on overhead reaching could not work as a data entry clerk and typist is unsubstantiated. Substantial evidence supports the ALJ's finding that Plaintiff can perform work in the national economy. Accordingly, we dismiss Plaintiff's second objection.

## V. CONCLUSION

We agree with the Magistrate Judge's conclusion that the ALJ's decision is supported by substantial evidence. Our review of the record shows that substantial evidence supports that Plaintiff is not disabled within the meaning of the Act, and that she retained the RFC to perform light work. Moreover, the ALJ correctly gave little weight to Plaintiff's three treating physicians, and afforded great weight to the state agency medical expert. The ALJ properly based this decision on objective medical evidence, progress notes from treating physicians, and Plaintiff's daily living activities. Substantial evidence supported the ALJ's determination that Plaintiff could perform other work in the national economy. We will adopt the recommendation of the Magistrate Judge, and deny Plaintiff's appeal. An appropriate Order is attached.

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANN MARIE MADISON,<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　　　　　Defendant. | CIVIL ACTION NO. 3:CV-07-364<br><br>(Judge Kosik) |

## **ORDER**

AND NOW, this 29th day of July, 2008, IT IS HEREBY ORDERED THAT:

(1) The Report and Recommendation of Magistrate Judge Malachy E. Mannion dated April 1, 2008, is **ADOPTED;**

(2) The Plaintiff's appeal is **DENIED**;

(3) The decision of the Commissioner is **AFFIRMED**; and

(4) The Clerk of Court is directed to **CLOSE** this case and to **FORWARD** a copy of this Memorandum and Order to the Magistrate Judge

　　　　　　　　　　　　　　　　　　　*s/Edwin M. Kosik*
　　　　　　　　　　　　　　　　　　　United States District Judge